Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| LUIS MILIAN Y OTROS<br><br>Parte Recurrida<br><br>v.<br><br>LAND MARINE CARGO, INC. Y OTROS<br><br>Parte Peticionaria | TA2026CE00230 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Caso núm.: CG2025CV04346<br><br>Sobre: Despido Injustificado (Ley Núm. 80) y Otros |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de mayo de 2026.

La parte peticionaria, Land Marine Cargo, Inc. (Land Marine o peticionaria), comparece ante nos vía *certiorari* presentado el 23 de febrero de 2026. En este, solicita que revoquemos la *Orden*[2] emitida el 10 de febrero de 2026, notificada el 11 de febrero de 2026, por el Tribunal de Primera Instancia, Sala de Caguas (TPI). Mediante el referido dictamen, el TPI denegó la solicitud de conversión del caso al procedimiento ordinario. Junto con su recurso, la peticionaria presentó *Moción Urgente en Auxilio de Jurisdicción Solicitando Paralización de los Procedimientos,* de la cual emitimos una *Resolución* en la que decretamos la paralización de los procedimientos.

Oportunamente, la parte recurrida, compuesta por Luis Milián y otros (Milián o recurridos), compareció mediante *Memorando en Oposición a Petición de Certiorari y en Cumplimiento de Orden.*

---

[1] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.
[2] Entrada 26 SUMAC-TPI.

Examinado el recurso, la oposición y a tenor con la Regla 52.1 de Procedimiento Civil, y los criterios (A), (E) y (G) de la Regla 40 de nuestro Reglamento[3], expedimos el auto de *certiorari* y revocamos la *Orden* recurrida, a los fines de que el pleito se tramite por la vía ordinaria.

## I.       Trasfondo fáctico y procesal

El 17 de diciembre de 2025, el Sr. Luis Milián (señor Milián o querellante) y la Sra. Zoraida Acevedo (señora Acevedo) presentaron una querella en contra de Land Marine sobre despido injustificado en la modalidad de despido constructivo, represalias y daños.  La querella fue presentada al amparo del procedimiento sumario establecido en la Ley Núm. 2-1961.

Los recurridos alegaron que el señor Milián fue empleado de Land Marine "a tiempo indeterminado" desde el 2 de junio de 2003 hasta el 28 de mayo de 2025, donde ocupó el puesto de mayor jerarquía: Service Center Manager. Explicaron que Land Marine es una subsidiaria de ArcBest Corporation (ArcBest), una corporación establecida en Arkansas.

El señor Milián expuso que, en varias ocasiones, se quejó del trato de sus supervisores y del ambiente de la empresa y que esta no investigó dichas quejas. También alegó que el 28 de mayo de 2025, el Sr. Luis Ariza y el Sr. Matt Pettit, ambos empleados de ArcBest y residentes de Georgia, en conjunto con el Sr. Bradley Truitt, le indicaron que tenía que llevar a cabo una "conducta específica o lo denunciarían a las autoridades". Señaló que estos le indicaron por escrito que, si no llevaba a cabo la conducta, se le podría procesar penalmente. El señor Milián arguyó que las amenazas de Ariza, Pettit y Truitt se hicieron de forma verbal y escrita en varias ocasiones y que, a pesar de que las conductas de

---

[3] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025).

Ariza y Pettit violaban las políticas de ArcBest y el Código de Conducta de dicha empresa, estos seguían como empleados de ArcBest, mientras él fue despedido sin justa causa el 28 de mayo de 2025.

A base de lo anterior, Milián argumentó que su despido fue un acto de represalia por sus quejas respecto al ambiente laboral y el trato. Añadió que ArcBest, Land Marine, Ariza y Pettit hicieron comentarios despectivos y falsos sobre Milián y que lo difamaron. Por lo anterior, Milián reclamó el pago de $255,264.09 en concepto de mesada por el despido injustificado y los salarios dejados de devengar. También solicitó ser reinstalado en su puesto, más una indemnización no menor de $200,000.00 por los daños sufridos como consecuencia de los actos de represalias. Además, Milián reclamó que la conducta delictiva de extorsión y chantaje de Ariza y Pettit le ocasionó daños los cuales estimó en no menos de $200,000.00. También reclamó la imposición de daños punitivos contra Ariza, Pettit y Arc Best, así como $100,000.00 en daños por difamación.

Por su parte, la señora Acevedo también reclamó haber sufrido daños como esposa del querellante, los cuales estimó en una suma no menor de $100,000.00.

Así las cosas, el 7 de enero de 2026, Land Marine, contestó la querella[4]. En resumen, alegó que el señor Milián incurrió en conducta prohibida al cambiar la forma de pago a los contratistas independientes que prestaban servicios como choferes, lo que causó que Land Marine tuviera que pagar más de $109,000.00 en exceso, lo que afectó el normal y buen funcionamiento de la empresa. Argumentó que no recibieron queja alguna del querellante, que este fue objeto de acción disciplinaria y que renunció voluntariamente a

---

[4] Entrada 10 SUMAC-TPI.

su empleo, por lo que no tenía derecho a mesada alguna. Por último, puntualizaron que no procedía la tramitación de la querella bajo el procedimiento sumario.

Luego de varios trámites, el 8 de enero de 2026, Land Marine presentó una *Solicitud para que se tramite la presente acción por la vía ordinaria*[5]. En síntesis, arguyó que la querella presentada por Milián no podía tramitarse bajo el procedimiento sumario porque la Ley 2-1961, *supra*, no estaba al alcance de la causa de acción de la señora Acevedo (esposa de Milián). En esa misma línea, Land Marine destacó que el querellante incluyó a terceros empleados a quienes tampoco le aplican las disposiciones de la Ley 2-1961, *supra*, y que las causas de acción de alegada conducta criminal de extorsión y chantaje, difamación y alegaciones relacionadas a sufrimientos y angustias mentales están claramente excluidas del ámbito de causas o reclamaciones que pueden ventilarse al amparo del procedimiento sumario.

El 9 de febrero de 2026, el señor Milián presentó su oposición a la solicitud de conversión[6]. En su somero escrito, esgrimió que el caso no era complejo, y que, si el patrono necesitaba que se ampliara el descubrimiento de prueba, no se oponían a ello. En ese sentido, sostuvo que, desde que Land Marine fue emplazado, no había llevado a cabo ningún descubrimiento de prueba y tampoco había suministrado los documentos requeridos por el recurrido en un aviso de deposición *duces tecum*. De otra parte, en cuanto a que el procedimiento sumario no cobijaba a los coquerellados Ariza y Pettit, contestó que dicha defensa le corresponde levantarla a estos últimos. El 10 de febrero de 2026, Land Marine presentó *Réplica a "Oposición a Solicitud de Conversión*[7], en la que argumentó que no

---

[5] Entrada 13 SUMAC TPI.
[6] Entrada 14 SUMAC-TPI.
[7] Entrada 25 SUMAC-TPI.

procedía la tramitación del pleito por la vía sumaria ante la multiplicidad de causas de acción instadas en la querella, así como incluir reclamaciones de daños y perjuicios por alegada conducta delictiva y difamación, además de los daños y perjuicios reclamados por la cónyuge del señor Milián. Por ello, planteó que permitir que el caso se tramite bajo el procedimiento sumario entorpecería e impactaría su derecho a una defensa adecuada a las alegaciones y reclamaciones presentadas por los recurridos.

El 10 de febrero de 2026, notificada el 11 de febrero de 2026, el TPI emitió la *Orden* recurrida en la que dispuso lo siguiente:

> Habiéndose examinado la solicitud de conversión a procedimiento ordinario, Entrada 13, y habiendo examinado la Oposición a Solicitud de Conversión, Entrada 24, por los argumentos presentados por la parte querellante, se declara No Ha Lugar la conversión.

Inconforme, Land Marine presentó el recurso de *certiorari* que nos ocupa, junto con una *Moción Urgente en Auxilio de Jurisdicción Solicitando Paralización de los Procedimientos*[8]. En su recurso, formuló los siguientes señalamientos de error:

> Erró y abusó de su discreción el TPI al negarse a convertir el caso al procedimiento ordinario toda vez que la Ley 2 no autoriza incluir como querellantes a personas que no fueron parte de la relación obrero-patronal.

> Erró y abusó de su discreción el TPI al negarse a convertir el caso al procedimiento ordinario toda vez que la Ley 2 no autoriza incluir como querellados a personas particulares en su capacidad personal.

> Erró y abusó de su discreción el TPI al negarse a convertir el caso al procedimiento ordinario toda vez que tres de las cinco causas de acción no son de índole laboral y, por tanto, no son susceptibles a ser resueltas a través del procedimiento sumario de la Ley 2.

El 25 de febrero de 2026, emitimos una resolución en la que paralizamos los procedimientos ante el TPI. Al día siguiente, el TPI se dio por enterado de nuestra resolución. A pesar de ello, aun habiéndose paralizados los procedimientos en el TPI, el 5 de marzo

---

[8] Entrada 2 SUMAC-TA.

de 2026, el TPI emitió una orden en la que le impuso una sanción de $100.00 a cada parte por incumplimiento con presentar el informe para el manejo del caso (Regla 37.1). El 11 de marzo de 2026, Land Marine cumplió con el pago de la sanción impuesta. Conforme surge de la Minuta del 10 de marzo de 2026, el TPI paralizó los procedimientos hasta que este tribunal se exprese.

El 5 de marzo de 2026, los recurridos presentaron *Memorando en Oposición a Petición de Certiorari y en Cumplimiento de Orden.*

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II.      Exposición del Derecho

### A. El *Certiorari*

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[9]

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.[10] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones

---

[9] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).
[10] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra,* al denegar la expedición de un recurso de *certiorari,* el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1*, supra,* para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[11], se justifica nuestra intervención. Estos criterios son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra,* enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari,* mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* guía la

---

[11] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[12]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[13] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

## B. La revisión de dictámenes interlocutorios en el contexto del proceso sumario de la Ley Núm. 2

La Ley Núm.2 de 17 de octubre de 1961, también conocida como la Ley de Procedimiento Sumario de Reclamaciones Laborales, 32 LPRA secs. 3118-3132, establece un mecanismo especial cuyo propósito esencial es la rápida consideración y adjudicación de las querellas presentadas por los obreros o empleados, primordialmente en aquellos casos de reclamaciones salariales, beneficios o derechos, como lo es el pago de la mesada en caso de un despido injustificado.[14]

"Para lograr este propósito, y al considerar la disparidad económica entre el patrono y el obrero, así como el hecho de que la mayoría de la información sobre los reclamos salariales o por un despido está en posesión del empleador, el legislador acortó los términos y condiciones que ordinariamente regulan y uniforman la litigación civil en nuestra jurisdicción".[15]

Atinente a nuestra función revisora, en *Dávila Rivera v. Antilles Shipping, Inc.[16]*, el Tribunal Supremo tuvo la oportunidad de

---

[12] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).

[13] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

[14] *Santiago Ortiz v. Real Legacy Assurance Company, Inc.*, 206 DPR 194, 206 (2021); *Bacardi Corporation v. Torres Arroyo*, 202 DPR 1014, 1019 (2019*); Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 265 (2018).

[15] *Peña Lacern v. Martínez Hernández, et al.*, 210 DPR 425, 434 (2022).

[16] 147 DPR 483 (1999).

examinar la facultad de los foros apelativos para revisar, vía *certiorari*, las resoluciones interlocutorias emitidas en pleitos incoados al amparo del procedimiento sumario establecido en la Ley Núm. 2, *supra.* Luego de evaluar el texto de la Ley Núm. 2 y su historial legislativo, el Tribunal Supremo concluyó que, de ordinario, la revisión de resoluciones interlocutorias era contraria al carácter sumario del procedimiento laboral y que, por lo tanto, la facultad de los tribunales apelativos al revisar dichas resoluciones es limitada.[17] Por consiguiente, como norma general, la parte que pretenda impugnar resoluciones interlocutorias en un procedimiento incoado al amparo de la Ley Núm. 2 deberá esperar hasta que se dicte sentencia final para entonces instar contra ella el recurso pertinente.

Sin embargo, el Tribunal Supremo señaló que la norma impuesta no es absoluta. De tal forma, a modo de excepción, los tribunales apelativos deben mantener y ejercer su facultad para revisar mediante *certiorari* aquellas resoluciones interlocutorias dictadas en un procedimiento sumario tramitado según la Ley Núm. 2 en las siguientes instancias: (1) cuando el foro primario haya actuado sin jurisdicción, (2) en situaciones en las que la revisión inmediata dispone del caso por completo, y (3) cuando la revisión tenga el efecto de evitar una grave injusticia.[18] En tales instancias, el carácter sumario de los procedimientos tramitados a tenor con la Ley Núm. 2, *supra,* ceden y los foros apelativos pueden revisar la resolución interlocutoria.[19]

### III.    Aplicación del Derecho a los Hechos

En su recurso, Land Marine plantea que el foro primario erró al negar la conversión del pleito al trámite ordinario. Basa sus

---

[17] *Íd.*, págs. 496-497.

[18] *Íd.*, pág. 498*; Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 722-723 (2016).

[19] *Díaz Santiago v. PUCPR et al.,* 207 DPR 339, 349 (2021).

argumentos, en lo siguiente: (1) que la parte recurrida incluyó como querellante a la señora Acevedo (esposa del señor Milián) y que esta no tuvo una relación obrero-patronal con Land Marine, por lo que su reclamación no está al alcance del procedimiento sumario de la Ley Núm. 2-1961, *supra*; (2) que la parte recurrida incluyó como querellados a personas particulares en su capacidad personal, entiéndase a Ariza y a Pettit (empleados de ArcBest/Land Marine); y (3) que de las cinco causas de acción instadas tres no son de índole laboral (difamación, daños y perjuicios del señor Milian y daños y perjuicios de la señora Acevedo), por lo que no son susceptibles de ser resueltas al amparo del procedimiento sumario.

Conforme expusimos en la segunda parte de nuestra ponencia, y al tomar en cuenta las consideraciones propias del procedimiento sumario consignado en la Ley Núm. 2-1961, *supra*, nos corresponde determinar si, como consecuencia del dictamen interlocutorio aquí impugnado, nos encontramos ante un caso extremo en el que los fines de la justicia requieren nuestra intervención[20]. Contestamos en la afirmativa.

De un examen de las alegaciones de la querella, surge que el señor Milián tuvo una relación obrero-patronal con Land Marine desde el 2 de junio de 2003 hasta el 28 de mayo de 2025. Como consecuencia del alegado despido injustificado, el señor Millián instó un total de cuatro reclamaciones contra su patrono y contra dos empleados, Ariza y Pettit. Dos de estas reclamaciones, sobre despido injustificado y represalias se presentaron al amparo de leyes y disposiciones laborares, las cuales están al alcance del procedimiento sumario estatuido en la Ley Núm. 2-1961.

Ahora bien, además de las reclamaciones laborales antes mencionadas, el señor Milián también presentó una reclamación de

---

[20] *Dávila, Rivera v. Antilles Shipping, Inc.,* supra, pág. 498.

daños contra los empleados Ariza y Petit por alegada conducta delictiva de extorsión y chantaje, más daños punitivos. En dicha reclamación también arguyó que ArcBest era responsable por los actos delictivos de dichos empleados. También presentó una reclamación de daños por difamación contra dichos empleados y ArcBest.

Aún más, en la referida querella, la señora Acevedo, esposa del recurrido, presentó una reclamación en la que alegó que sufrió daños como resultado de los daños que los querellados ocasionaron a su esposo. En definitiva, a pesar de que la querella presentada por los recurridos comprende dos causas de acción al amparo de leyes laborales que están dentro del alcance del procedimiento sumario estatuido en la Ley Núm. 2-1961, *supra*, no es menos cierto que esta también presenta tres causas de acción adicionales instadas al amparo de las disposiciones sobre responsabilidad civil extracontractual del Código Civil, las cuales ameritan dilucidarse bajo el trámite ordinario. Lo anterior, con el fin de evitar "el riesgo substancial de que se produzca una determinación errónea de la valoración de los daños, así como cualquier otra circunstancia especial que sea pertinente a la determinación que tiene que hacer el tribunal sobre si encauza el procedimiento por la vía sumaria u ordinaria"[21].

Cónsono con lo anterior, nos encontramos ante uno de los supuestos en que el dictamen interlocutorio recurrido requiere nuestra intervención, pues así lo requieren los fines de la justicia. En consecuencia, y luego de un examen sosegado del expediente y argumentos presentados por las partes, concluimos que el foro recurrido incidió al denegar la conversión del caso al procedimiento ordinario. En virtud de lo anterior, expedimos el auto de *certiorari* y

---

[21] *Berríos Heredia v. González*, 151 DPR 327, 347-348 (2000).

revocamos la orden recurrida. En consecuencia, se levanta la paralización de los procedimientos ante el foro de instancia y ordenamos la continuación de los procedimientos bajo el trámite ordinario.

**IV. Parte dispositiva**

Por los fundamentos que anteceden, expedimos el auto de *certiorari* y revocamos la orden recurrida. En consecuencia, se levanta la paralización de los procedimientos en el foro de instancia y ordenamos la continuación de los procedimientos bajo el trámite ordinario.

**Notifíquese inmediatamente.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Adames Soto concurre sin voto escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones